# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOHNNY M. STAGGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:08-00067 |
| v. ) | Judge Wiseman / Knowles |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled before February 1, 2004, and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") prior to this date, as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket Entry No. 12. Defendant has also filed a Motion for Judgment on the Administrative Record and supporting Memorandum of Law, which will be construed as a response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Entry Nos. 18-19.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgement on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

**I. INTRODUCTION**

Plaintiff filed his applications for a period of disability, DIB, and SSI[1] on March 14, 2003,[2] alleging that he had been disabled since December 30, 1996, due to hypertension, tendinitis, degenerative left shoulder, muscular cyst of the right eye, lower back pain, prostate problems, degenerative joint disease in right knee, post-traumatic stress disorder ("PTSD"), hardened arteries, poor blood circulation, gastroesophageal reflux disease, respiratory problems, depression, body cramps, swelling in his testicles, headaches, dental problems, sores and blotches on his body with easily peeling skin, inflamed liver, hearing loss in his right ear, arthritis, carpal tunnel syndrome, chest pains, and hemorrhoids. Docket Entry No. 10, Attachment ("TR"), TR 85-87, 108. Plaintiff's applications were denied both initially (TR 51-52A, 58-61) and upon reconsideration (TR 53-57). Plaintiff subsequently requested (TR 66) and received (TR 75-78) a hearing. Plaintiff's hearing was conducted on January 21, 2005, by Administrative Law Judge ("ALJ") Mack Cherry. TR 347-379. Plaintiff [3] and vocational expert ("VE") Kenneth Anchor, appeared and testified. *Id.*

On March 19, 2005, the ALJ issued a decision partially favorable to Plaintiff, finding

---

[1] The Record contains only an application for DIB. TR 85-87. Both Plaintiff's and Defendant's Brief, however, states that Plaintiff applied for DIB and SSI on March 14, 2003. Docket Entry Nos. 13, 19. Additionally, the ALJ's opinion states that Plaintiff applied for both DIB and SSI benefits. TR 15.

[2] The application for DIB benefits indicates that Plaintiff signed the application on April 3, 2003. TR 85-87. The application contains a stamp reading April 7, 2003. *Id.* Plaintiff's and Defendant's Briefs state that Plaintiff filed for DIB benefits on March 14, 2003. Docket Entry Nos. 13, 19. The ALJ stated in his opinion that Plaintiff filed for DIB on March 14, 2003. TR 15. These discrepancies are not, however, material to the issues before the Court.

[3] The transcript's index contains an error regarding Plaintiff's name, stating that "Johnny M. Cherry" testified. TR 348. This discrepancy is not, however, material to the issues before the Court.

that, as of March 14, 2003, Plaintiff was not entitled to a period of disability and DIB under sections 216(i) and 223 of the Social Security Act, but that Plaintiff was disabled under sections 1602 and 1614(a)(3)(A) of the Social Security Act. TR 261-270. The ALJ found that Plaintiff's disability began February 1, 2004, and had continued through the date of his decision. *Id.*

On May 21, 2005, Plaintiff timely filed a request for review of the hearing decision. TR 276-277. On February 2, 2007, the Appeals Council upheld the favorable portion of the ALJ's decision and remanded the unfavorable portion because the ALJ's decision failed to satisfy the requirements set forth in the Social Security Administration Regulations and the Social Security Rulings. TR 271-275. The Appeals Council specifically remanded the unfavorable portion of the ALJ's decision because: 1) the ALJ did not articulate his reasons for denying Plaintiff's claim beyond stating that Plaintiff was "not disabled" while insured, and that, accordingly, further evaluation under the sequential evaluation process was warranted for the Title II claim; 2) the ALJ's decision failed to indicate Plaintiff's maximum residual functional capacity with sufficient rationale and specific references to the evidence of Record in support of Plaintiff's assessed limitations; 3) the ALJ's decision did not contain an evaluation of Plaintiff's alleged or reported mental impairments, nor did it contain a discussion of the "B" and "C" criteria of 20 CFR §§ 404.1520a and 416.920a; 4) the ALJ's decision failed to incorporate Plaintiff's non-exertional limitations indicated by the state agency medical and psychological consultants; and 5) the ALJ failed to address Plaintiff's drug and alcohol abuse, which was necessary because the State agency psychological consultant opined that Plaintiff's alcohol dependence appeared to be the primary contributing factor to Plaintiff's mental limitations. TR 273-274.

ALJ Linda Gail Roberts conducted Plaintiff's second and third hearings on June 7, 2007,

3

and August 2, 2007, respectively. TR 380-418. Plaintiff failed to appear at his June 7, 2007, hearing and the ALJ issued a show cause order requiring Plaintiff to submit an explanation in writing as to why he missed his hearing. TR 380-388. Plaintiff's new hearing was held on August 2, 2007, during which Plaintiff and VE Kenneth Anchor appeared and testified. TR 389-418.

On August 10, 2007, the ALJ issued a decision partially unfavorable to Plaintiff, finding that Plaintiff had not been disabled within the meaning of the Social Security Act and Regulations prior to February 1, 2004, but that he became disabled on that date and remained disabled until the hearing date of August 2, 2007. TR 11-25. Specifically, the ALJ made the following findings of fact:

>  1. The claimant met the insured status requirements of the Social Security Act from the alleged onset date of December 30, 1996, only through March 31, 2000.
>
>  2. The claimant has not engaged in substantial gainful activity (SGA) since December 30, 1996, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
>  3. The claimant has had the following severe impairments since the alleged onset: lumbar spinal arthritis and disc disease (status-post laminectomy surgery performed at least 5 years before the alleged onset); degenerative joint disease (arthritis) of the non-dominant left shoulder, left wrist, fingers of both hands and right knee; chronic obstructive pulmonary disease (COPD); a post-traumatic stress disorder (PTSD, reportedly associated with military service in Vietnam); depression and a DA/A condition (heavy alcoholism) (20 CFR 404.1520(c) and 416.920(c)).
>
>  4. The claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

4

5. The claimant has had the residual functional capacity since the alleged onset to perform light work (lift/carry 20 pounds occasionally and 10 pounds frequently, and stand/walk or sit for 6 out of 8 hours) not requiring good far visual acuity and not requiring concentrated exposure to extremes of heat or cold, vibrations or pulmonary irritants (dust, fumes, odors, gases, poor ventilation, etc.), with mental functional ability to carry out detailed tasks with normal supervision, primarily in small group work settings focusing more on objects than people, with adequate mental adaptation abilities for functioning in such settings.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 1, 1949, and thus reached age 55 and advanced age on February 1, 2004. Before which, he was 50-54 years old (of approaching advanced age) from February 1, 1999, until January 31, 2004, and was 47-49 years old (a younger individual) from the alleged onset date until January 31, 1999 (20 CFR 404.1563 and 416.963).

8. The claimant has a high school equivalency education (20 CFR 404.1564 and 416.964).

9. The VE testimony established that all of the claimant's job skills were job specific and not transferable.

10. Prior to February 1, 2004, the date the claimant's age category changed to advanced age, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. Beginning on February 1, 2004, the date the claimant's age category changed to advanced age, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

5

12. The claimant was not disabled prior to February 1, 2004, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

13. The claimant was not under a disability within the meaning of the Social Security Act at any time through March 31, 2000, the date last insured (20 CFR 404.315(a) and 404.320(b)).

14. The claimant's substance use disorder(s) has not been a contributing factor material to the determination of disability (20 CFR 404.1535).

15. The history of longstanding and ongoing alcoholism warrants appointment of an independent representative payee (not a friend or family member) and one is hereby recommended.

TR 18-25.

On October 12, 2007, Plaintiff filed a request for review of the hearing decision.[4] TR 343-346. On August 22, 2008, the Appeals Council issued a letter declining to review the case (TR 7-10), thereby rendering the decision of the ALJ the final decision of the Commissioner.[5] This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

---

[4] The Record does not contain a form filed by Plaintiff to the Social Security Administration requesting a review of the hearing decision. Plaintiff's attorney, however, wrote a letter to the Appeals Council stating that Plaintiff requested a review of the ALJ's decision. TR 343-346.

[5] The Appeals Council considered additional evidence that it subsequently included as part of the Record. TR 10.

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

7

273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which

significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[6] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

---

[6] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: 1) not obtaining new medical expert testimony concerning the issue of disability from December 30, 1996, through January 31, 2004, as requested by the Appeals Council's decision dated February 2, 2007[7]; 2) ignoring strong medical evidence in the Record, which, if taken into consideration, would have necessitated a finding that Plaintiff was disabled beginning January 18, 2000; and 3) finding that prior to February 1, 2004, there were a significant number of jobs that the claimant could perform considering his age, education, work experience, and residual functional capacity. Docket Entry No. 13. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed with an immediate award of benefits, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and

---

[7] Plaintiff's Brief states that the Appeals Council's Order of Remand was dated February 7, 2007. Docket Entry No. 13. The Appeals Council's Order of Remand was in fact dated February 2, 2007. TR 271-275.

10

>transcript of the record, a judgment affirming, modifying, or
>reversing the decision of the Commissioner of Social Security,
>with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Compliance with the Appeals Council's Order of Remand**

Plaintiff argues that the ALJ erred by not obtaining new medical expert testimony as "required" by the Appeals Council's Order of Remand. Docket Entry No. 13. Defendant responds that the ALJ followed the Appeals Council's Order of Remand because the Order did not obligate the ALJ to obtain new medical evaluations. Docket Entry No. 19. Defendant argues that the ALJ was ordered to obtain new consultative medical examinations only if additional evidence did not clearly depict Plaintiff's limitations. *Id.* Defendant further responds that the ALJ did not absolutely refuse to obtain a consultative examination, but rather, informed Plaintiff's counsel that if he could provide any justification for a consultative examination, the ALJ would send for a new consultative psychological examination.[8] Plaintiff's counsel, however, failed to provide such justification. *Id.* Additionally, Defendant responds that the ALJ

---

[8] The ALJ's referenced statement is quoted, *infra,* on page 13.

11

complied with the Appeals Council's Order of Remand because the Appeals Council's Order provided that Plaintiff's representative might be enlisted as necessary to secure additional evidence, which is precisely what the ALJ required: the ALJ offered Plaintiff's counsel the opportunity to obtain and present additional evidence. *Id*.

The Appeals Council's Order of Remand stated in pertinent part as follows:

> Upon remand, the Administrative Law Judge will take appropriate action to resolve the issue(s) cited above and any other issues which the Administrative Law Judge finds to be appropriate, in accordance with the applicable Social Security Administration regulations and Rulings.
>
> As appropriate, the Administrative Law Judge will obtain updated medical records from the claimant's treating and other medical sources, including clinical findings, test results, and medical source statements about what the claimant can do despite the impairment(s). If the claimant is represented, the representative may be enlisted as necessary in securing the additional evidence. If the evidence does not adequately clarify the record, the Administrative Law Judge will recontact the medical source(s) for further information (20 CFR 404.1512(e) and/or 416.912(e)).
>
> If additional evidence does not clearly depict the claimant's limitations, the Administrative Law Judge will obtain a consultative examination, including a medical source statement about what the claimant can do despite the impairment(s). In obtaining the additional evidence, the Administrative Law Judge will be guided by the procedures set forth in 20 CFR 404.1512 and/or 416.912.
>
> Further, *if necessary*, the Administrative Law Judge will obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairment(s) (20 CFR 404.1527(f) and/or 416.926(f) and Social Security Ruling 96-6p).
> . . .

TR 274. (Emphasis added.)

While Plaintiff argues that the ALJ erred in failing to obtain new medical expert testimony pursuant to the Appeals Council's Order of Remand, this simply is not correct. As noted above,

the Appeals Council directed the ALJ to obtain evidence from a medical expert *if necessary*. TR 274. (Emphasis added.) At the June 7, 2007 hearing, the ALJ affirmed this understanding of the Appeals Council's Order, stating:

> Now, first off, why do I need to send this man out for a psychological? If I understand what Cherry, Judge Cherry did, he found him disabled, but you, as his representative and attorney, need to prove, you have the burden of proof, of proving that there is something that goes back to the date last insured that would cause him to be disabled for Title II.
> So doing a current psychological would not go back past 200- [*sic*], the date that Cherry granted it was February of 2004. You need to get back to March of 2000, and as far as my doing it, down here it says if claimant is represented, the representative may be enlisted in [*sic*] necessary, in securing the evidence, and that is your job as an attorney to dig up that evidence. You've appealed it. You've got it sent to the Appeals Council. You've got it sent back here. Find some evidence that will pay your client past back before Judge Cherry allowed it, including back to the date last insured.
>
> . . .
>
> []f I see any justification whatsoever, if you give me any evidence, and there – first of all, you've got to give me evidence, and if you give me any evidence, any justification, I'll send him out after the hearing for one if it's determined.

TR 386-388.

The ALJ's statement directing Plaintiff's counsel to produce additional evidence from examining sources, rather than taking such action herself, is consistent with the Appeals Council's Order and the Regulations. The ALJ articulated that, from her understanding of ALJ Cherry's ruling and the Record as it then existed, a new consultative psychological examination was unnecessary at that time. *Id*. The Regulations provide that Plaintiff must provide medical evidence documenting his impairment(s). *See* 20 CFR §§ 404.1512(c) and 416.912(c). The ALJ complied with the Appeals Council's Order of Remand by finding that it was not necessary to

13

obtain a new consultative examination unless and until Plaintiff's counsel could provide evidentiary justification for such an action, and by asking Plaintiff's counsel to produce additional evidence. This action was proper.

## 2. ALJ's Development of the Record

Plaintiff argues that the ALJ ignored strong medical evidence in the Record, which would have demonstrated that Plaintiff was disabled on January 18, 2000. Docket Entry No. 13. Plaintiff specifically argues that these medical records demonstrate that Plaintiff's treating physician, Dr. Birchmore, had prescribed medication for degenerative joint disease, hypertension, and PTSD as early as January 18, 2000. *Id*. Plaintiff additionally argues that the ALJ ignored an x-ray of Plaintiff's right knee documenting mild narrowing of the medial compartment and calcification in the distal femoral artery. *Id*.

Defendant responds that the ALJ correctly found that Plaintiff was not disabled as of January 18, 2000, because the x-ray cited by Plaintiff failed to demonstrate that this knee condition affected his functionality. Docket Entry No. 19. Defendant further notes that the ALJ, in her decision, actually found that Plaintiff suffered from degenerative joint disease of the right knee. *Id*. Defendant argues that the x-ray of Plaintiff's knee and outpatient medication history showing prescriptions for Naproxen pain medication on January 18, 2000 and November 9, 2000 do not justify an award of disability benefits. *Id*.

The ALJ has a duty to "fully and fairly develop the administrative record," and where evidence suggests that a claimant may well meet a listed impairment, the ALJ must develop the evidence in order to determine whether or not the listing is met. *Johnson v. Secretary*, 794 F.2d 1106, 1111 (6th Cir. 1986). In doing so, the ALJ must identify the reasons and basis for crediting

14

or rejecting certain items of evidence (*see, e.g., Morehead Marine Services v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998); *Hurst*, 753 F.2d at 519), as there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision (*Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)).

Contrary to Plaintiff's assertion that the ALJ ignored Dr. Birchmore's medical records, the ALJ's decision is replete with references to Dr. Birchmore's reports. The ALJ considered Dr. Birchmore's reports that documented Plaintiff's medication prescriptions for degenerative joint disease, PTSD, and hypertension. TR 209-211, 213, 226-227, 233-234. For example, the ALJ noted that Dr. Birchmore had prescribed Plaintiff Naproxen for pain and Lisinopril for hypertension. TR 18-19, 21. The ALJ further noted that Plaintiff had no history of mental health treatment other than intermittent prescriptions for Zoloft. TR 18, 213. The ALJ's decision demonstrates that he considered Dr. Birchmore's records indicating Plaintiff's treatment for degenerative joint disease, hypertension, and PTSD.

Although Plaintiff correctly asserts that the ALJ did not expressly reference a January 18, 2000, x-ray of Plaintiff's right knee, the ALJ clearly demonstrated that he considered this evidence in determining that Plaintiff's degenerative joint disease of the right knee was severe, but not severe enough to meet a disabling level of severity within the meaning of the Social Security Administration. TR 18-20. For example, the ALJ specifically found that Plaintiff had a severe impairment of degenerative joint disease in his right knee. TR 18. The ALJ found, however, that the x-ray evidence of musculoskeletal impairments had "consistently only shown mild abnormalities." TR 20. This finding is the impression and diagnosis from the x-ray of Plaintiff's knee on January 18, 2000, which revealed "*mild* narrowing of the medial compartment

15

and calcification in the distal femoral artery," a minor abnormality. TR 309. (Emphasis added.) The ALJ articulated the findings of the x-ray when determining that Plaintiff's musculoskeletal impairments failed to demonstrate the requisite disabling level of severity under the Listings. Plaintiff's argument fails.

### 3. Hypothetical Questions Posed to the VE

Plaintiff finally claims that the ALJ erred in finding that, prior to February 1, 2004, a significant number of jobs existed that Plaintiff could perform considering his age, education, work experience, and residual functional capacity. Docket Entry No. 13. Plaintiff argues that the ALJ erred in making this determination because the hypotheticals that she posed to the VE did not include all of the supported impairments and their resulting limitations. *Id.* Plaintiff specifically argues that the ALJ posed hypotheticals that failed to incorporate comments on the Vocational Analyses forms, which indicated that "all jobs that would be considered transferrable require the exposure to weather conditions frequent to constant" TR 136), and that Plaintiff should "work in small group task oriented" (TR 153) positions. *Id*. Plaintiff argues that the VE identified jobs, such as small products packer and table worker, that would not "fall into the range of work in small group task oriented." *Id*.

Defendant responds that, contrary to Plaintiff's assertion, the ALJ posed proper hypotheticals to the VE. Docket Entry No. 19. Defendant contends that Plaintiff's environmental restrictions and ability to function in small group work settings were included in the hypotheticals posed because these restrictions appeared in Exhibits 5F and 4F, which the ALJ asked the VE to consider while making his determination. *Id*. Defendant also argues that the Regulations do not require an ALJ to adopt an RFC as formulated by the Tennessee

16

Department of Human Services because the ALJ is responsible for formulating a claimant's RFC at the administrative hearing level.  *Id., citing* 20 CFR §§ 404.1546(c), 416.946(c).

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity.  20 C.F.R. §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).  The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations or environmental limitations.  *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).  In the presence of nonexertional limitations that would preclude the application of the grid regulations, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle."  *Kirk v. Secretary*, 667 F.2d 524, 531 (6th Cir. 1983).  In other words, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's limitations.  *See Howard v. Comm'r of Social Security*, 276 F.3d 235, 237 (6th Cir. 2002)*; Varley*, 820 F.2d at 779 (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978)).

In the case at bar, the hypothetical questions posed to the VE contained descriptions of Plaintiff's physical and mental impairments.  While the ALJ did not pose a hypothetical question to the VE based on the restrictions contained in Exhibits 8E (TR 135-136) and 12E (TR 153)

17

specifically, the Exhibits that the ALJ did incorporate in her hypotheticals contained descriptions of impairments that were consistent with the impairments in Exhibits 8E and 12E. For example, Dr. Saul Juliao's RFC assessment of Plaintiff (Exhibit 5F at TR190-197), which the VE considered (TR 414), indicated that Plaintiff should avoid concentrated exposure to vibration, fumes, odor, gases, poor ventilation, extreme cold, and extreme heat. TR 194. Penny Dahl found in her Vocational Assessment (Exhibit 8E at TR 135-136) that Plaintiff should avoid concentrated exposure to vibration, fumes, cold, and heat. TR 135-136. Moreover, the ALJ asked the VE to consider Dr. George Livingston's psychiatric review (Exhibit 4F at TR 173-189), which stated that Plaintiff would probably function best in small group work settings with tasks focused more on objects rather than people. TR 173-189, 414. Examiner A. Winters found in Exhibit 12E (TR 153) that Plaintiff had the RFC for work in "small group task oriented." TR 153.

Although the ALJ did not specifically reference Exhibits 8E and 12E, the hypotheticals posed by the ALJ to the VE clearly incorporated Plaintiff's environmental and small group work limitations. The ALJ's hypotheticals included Plaintiff's limitations. The ALJ could therefore rely upon the VE's answers regarding the availability of work appropriate for Plaintiff. Accordingly, the ALJ properly determined that a significant number of jobs existed that Plaintiff could perform considering his age, education, work experience, and RFC. TR 23-24. Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgement on the Administrative Record be DENIED, and that the decision of the

18

Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days after service of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

_____
E. CLIFTON KNOWLES
United States Magistrate Judge